Raffaea et al. Plaintiffs' Appellants v. Victoria Brown, Defendant Appellee. Arguing for the Appellants, C. Nicholas Kronauer. Arguing for the Appellees, Glenn R. Weber. Are both parties ready to proceed? Yes, Your Honor. Yes, Judge. Mr. Kronauer, you may proceed. Thank you. May it please the Court. Good morning. On behalf of Mr. Weber and I, thank you everyone for your time and consideration for this matter. As you know, we're here today because a jury verdict was entered in plaintiff's favor, but the verdict was a nominal amount which the cumulative effect of various errors when going through today resulted in our position is passion and prejudice have made that jury verdict something nominal relative to the evidence, relative to the injuries, and relative to the case. Now before I begin with my presentation, is there any specific area you want me to address? We've got 15 minutes. There's a lot to discuss. Otherwise, I'll just kind of go through what I have prepared. Counsel, I have a preliminary question and then as you may know, you certainly may start your argument, but the court may interrupt your argument with questions that we have. And I know I have several and my colleagues may have several. But preliminarily, I'd like to ask you, who signed a certificate? Looking at your opening brief, you signed a certificate indicating that the brief conforms with Supreme Court Rules 341 A and B. And I'm sure you're familiar with that part of Supreme Court Rule 341 A that requires that the font for these briefs be at least 12 points. My eye tells me, and I don't have another way of measuring, that the font that was used in the opening brief is not 12 points. What size font did you use? I'm looking at the brief right now, Judge, and you can scare them on size 12. That's the font I've used for other briefs. Okay, if that's what you use, but it appears much smaller. It's not Times New Roman. I know that it's Garamond. Maybe that's why it looks smaller. All right, go ahead with your argument, Counsel. I have a preliminary question as well, and maybe we should save some time. As some of your arguments you're making, there were no timely objections and the effect of curative instructions by the court. As you go through your argument, make those points so we don't have to interfere. Sure, I will. Thank you. Honorable Bridges, any preliminary issues you want me to address? No, I have some questions, but I'll have you address those first, and then I'll have some others. Sure, thank you. So as you know, I don't want to regurgitate my I'll read it, but jury verdicts are not safe for Saint. I know they're hard to return, but when they're clearly erroneous, erroneous or unjust, it must be set aside. Give me set aside for three reasons. If damages issues was ignored, which is, I believe, an issue here, passion or prejudice, which I believe is an issue here, or the word bears no reasonable relationship to the last suffered, which also applies here. And I believe the Can we go on? Apologies are probably pronounced the wrong case. I think frames the issues similarly to the case before us, except to start with our case. We have something that I believe kind of starts the cumulative air in this case, and that's a summary judgment motion. So with regard with regard summary judgment, what basis is there for us to review the denial of plaintiff's motion for partial summary judgment? When there's the denial of summary judgment motion in the case proceeds to trial, any error merges into the judgment entered at trial. So how can review? How can we review that ruling now? Well, that was one of the orders we put in the documents to be reviewed. Summary judgments reviewed de novo. And the issue with summary judgment is whether the shell shall be given its ordinary meaning, which means when there's a summary judgment that should be ordered ordered on issues of liability, then the court must enter that order rather than deny it and then let the defense come in and change their answer. So, um, you know, I believe that issue was preserved, uh, with the documents, but I don't know how it could be preserved for us to rule on it if it merged into the judgment entered after the trial. Well, the judgment, I'm gonna move on to a different subject. Um, talked about the damages here being incompatible with the jury factual findings, and you use the term inconsistent and incompatible in your brief. Yeah, clear about what you are arguing. You're not arguing that there any was any legal inconsistency in the verdict that using that term of that term is a term of art, right? Your argument is that the essence against the manifest way to the evidence that the evidence would have required a different verdict. Is that your argument, counsel? So not necessarily judge. And I think that the problem in this dovetails into the jury instruction issue. The problem is, we don't know if the jury was awarding the $500 for future damages, which is against the manifest way of the evidence, or if the jury was warning $500 for lost wages, which was not an evidence was not put before the court, which would make it inconsistent because that evidence was never even presented. So I, you know, unfortunately, the lack of clarity with the verdict form either one of those is true. Which one's true? I don't think any of us will be able to determine that based on the verdict. The verdict form in number four says specifically the value of earnings lost and the present cash value of earnings reasonably certain to be lost in the future. So we've got past and we've got future in this right. But there was no. The only evidence we have of lost future earnings was for Mr Gibson, which was in the six figures that verdict form. The way it reads includes past lost wages, which was not evidence was not before the court. And if you recall, I was trying to itemize those out differently. So to put $500 on future or past, um, is against the math always manifest way to the evidence for the future damages, and it's legally inconsistent for the past images. But Gibson's report was in 2017. He testified in 2019. So and he used the same figures. So could we not say that the time interval encompassed then the past lost wages? That's correct, Judge, because there's nothing in that report that would substantiate a $500 lost wage claim, whether 2017, 2018 and 2019. Well, the jury could have disbelieved all of Gibson's testimony and decided that, um, instead that there was, um, um, as defense counsel argues, soft tissue, perhaps damage or injury and that he had recovered and that the recovery $500 was for that period, that six week period in which he was recovering and was not able to do as many concerts and performances. Isn't that correct? No, I would respectfully disagree, Judge. Again, the reason for that is there is no issue. The defense theory in this case wasn't that there was a soft tissue injury. The defense theory was that there's no proximate cause impingement syndrome. The only evidence we provided for Mr Rafi is that this impingement syndrome, which, as you know, phrase the muscle was a significant injury causing lost future wages. So for the jury to award $500 for lost wages again is an issue that wasn't before him. There's evidence to it. It's totally unrelated to Mr Gibson's opinion. Well, they could have. It's related to the experts and the experts testimony. Isn't that correct? No, for them. The defense had their expert testify with regard to the injury. Isn't that right? With the injury, not economics and their their their defense was no proximate cause. The injury that we alleged was not related to crash. The jury found proximate cause, and that's the issue in the case. If they find proximate cause, the next is the future damages related to that injury. And to let the jury find a soft tissue injury for six weeks when that wasn't in the evidence that wasn't produced, adduced, was not the issue in the case, again, goes back to, at the very least, against the manifest way of the evidence. The issue was between Dr Glasgow and Dr Player. Dr Glasgow said impingement syndrome related to crash. Dr Player said it's, you know, hereditary, unrelated, spontaneous, right? So there's there's no. So they couldn't believe that the jury could have believed that correct and not made the connection. They couldn't believe Dr Player. And if they did that right, they would have had to have awarded 00 dollars to believe Dr Player. There is no this, unlike most cases of black and white situation where if you believe Dr Player, the award zero. If you don't believe Dr Player, the only evidence is Dr Gibson, which is in the six figures. If they don't believe Dr Gibson, that that that is then their prerogative. But then that amount should have also been zero. Why did they have to believe Mr Dr Gibson's testimony? Um, except all of it rather than, um, some of it. Well, you know, it's all of it. Well, as I argue, you know, there could have been a range off Dr Gibson that could have fell within what's reasonable. $500 is not reasonable. If they awarded $100,120 something below what Mr Gibson said, you know, that's possible. But there is no way to infer deduce extrapolate $500 from Mr Gibson's opinions. Well, they could have determined that perhaps his methodology and calculating the lost earnings was flawed. Could they not? If they did, the result would have to be zero. And I'm not sure that jury's sitting there, especially with with the complexity of future earnings under the cell case, which I say, um, to arrive at $500 again, it's just there's no basis in that. It's just picked out of thin air. I mean, I think the law is clear. When there's evidence, juries can't disregard it. Um, there has to be some type of reasonable basis tied to when there's actually known for the $500. And so couldn't a jury have considered Gibson's testimony reasonably having considered that reasonably conclude that the plaintiff had never earned more than $15,000 in a year, along with the actual earnings history, be only entitled to the, uh, minimal, uh, or nominal award here. Well, and so that dovetails another issue and that's what the Syrian background that I was precluded from getting in, um, that door was closed. So has he ever earned more than $15,000 in America? No, but he was only here for several months before he was T-boned. So without me being able to paint that picture for the jury on why his wages were low, because he sought asylum, he came here. I mean, he was a notorious musician in the Middle East. I mean, it's not an accurate representation or picture that's painted for them when I can't tell them the reason his wages are down is because he is an immigrant starting to get established in America. Um, well, the trial court did not preclude you from asking a question, uh, that would go to getting a fair and impartial jury. I mean, you could have asked a question. I don't know. Trial counsel could have asked a question regarding, um, what they, um, had any bias against someone of a Syrian background. Could they not? I was not allowed to ask that question. Judge the statement in the actual transcript states, he doesn't want to get in the facts of the case and I can talk about it in opening, but I could not during board here, do the motions eliminate due to Mr. Weber's objection, get into the Syrian background. Well, my, my reading of the record was a little bit different. And that was the trial judge precluded a question specifically about immigration and asylum rather than, um, that, uh, your client, uh, was of Syrian background. No, um, I'm looking for the quote, but my recollection is asylum was not to be talked about at all. The issue was the fact he's from Syria is not going to cause any prejudice. And that was the bar. And that's when the judge said, well, you can talk about an open, you just can't talk about it now. Counsel, if I could ask you regarding, go ahead, go ahead. Justice Bridges. Uh, the, uh, you cite a number of cases to support your argument that the trial court was required to use separate lines on the verdict forms to delineate between, uh, past and future losses. However, uh, none of the cases cited actually required that you include those separate lines. Well, I think this is a gray area. And I think if you read the powers case, the powers case does hold that. And the powers case looks at the use of the term among, among economic and non-economic. And usually the term among means more than two. So if it was just a categories issue, the non-economic damages are X, the economic damages are Y, the term among wouldn't be used. And the reason they use among is because you want a clear and concise verdict form that outlines all the potential damages so that the courts on review know what the jury did and why they did it. So, so the, the, that case does not require it to be, uh, the, the lines be added on the, uh, jury forms. So, well, I think if you take powers in conjunction with the language, um, that is required, the verdict shell, I think it's required based upon president stare decisis. I think the only Supreme court rule is, is unclear. And that's why courts sense that have all basically taken the same consistent approach that clarity is better. And you get clarity by itemizing past and future among the economic loss and non-economic and non-economic damages, but isn't, but wasn't, but didn't a jury instruction that was issued in this case, comply with the law. To the jury instruction in this case, comply with the law. I think the jury instruction in this case, follow the pattern instructions to just consolidate and condense them improperly. And the Supreme court rule two 39, a, uh, that says trial court, she'll use the IPI instructions unless such instruction doesn't, uh, you know, naturally, uh, state the, uh, current state of the law. So this jury instruction did all of that. It's so what makes it tough is those jury instructions have bracketed language. You've got to add, you have to remove. It's not just a pattern instruction such as, you know, what's the definition of negligence. So, uh, the, again, the problem is that it states the law. Confusing confounding situation that leads to lack of clarity when we're now trying to figure out an appeal, what, what happened and what made the jury do what they did. And I believe I'm about out of time. Is there any last questions? Sorry. Go ahead. Did agree with justice bridges that these Illinois pattern jury instruction that was used here that itemize the damages on the verdict form, um, do accurately state the law. The, the, do the, do the bracket language state the law? Yes. Does the verdict form accurately state the law and how it's itemized? No, I don't. And how it's itemized. Correct. And that's the Henderson case. What says that the jury, the verdict forms to require jurors to carefully consider the purpose for which each dollar in damages was awarded. It says each dollar, not each dollar category, each dollar, which again, you need to it out so that there's clarity, but the case you're referring to approved a verdict forms that not did not use separate lines to distinguish past and future losses. Well, cause I believe in that case, there wasn't an issue before the court of past and future. It was just, there's only evidence that similar to our case of future. I don't have any other questions. Yes. Okay. Do you have any additional questions? Briefly? How does Dr. players brief reference to insurance prejudice the plaintiff when the trial court sustained the objection? Yeah. So that's the proverbial catch 22, right? Um, if, if you object, is it cured? If you don't object, is it waived? The problem is it's such a highly inflammatory prejudicial issue that we're again, is an issue raised in more gear to talk about that. Just for him to tell the jury that he had to retire because his malpractice insurance increased his association with tort reformers association with verdicts, drive up costs that once that bells were on, you can't unring it. And there's no reason for that to be elicited. Um, other than the fact to try to get sympathy and inflame the jury. And it's, you know, Dr. Player is a well-versed expert. He's been around the block. Mr. Webber's used of numerous times for that to come out there. There's no reason for that to be in the case other than to help drag down the verdict. It wasn't a reference to insurance for any of the parties. It was his own insurance, correct? That is correct. His own, his own insurance. But there's case. I believe I cited a taxi case insurance in general. Um, is his off limits and highly prejudicial. It's all I get. I have no additional questions. Mr. Croner, we will, uh, at the end of a police argument, you will have an opportunity for rebuttal. Thank you for your time, everyone. Whoever you may proceed. Thank you. May it please? The court justices. Mr Brunauer, I'm gonna start and just kind of touch briefly on my some of the disagreements I have in the brief reference to insurance. There's a case called Hamdi, which was cited by plaintiff's counsel. And in that case, it says every it specifically says every reference to insurance is not necessarily prejudicial. And strictly personal to Dr Player, um, explaining why in 96 he no longer did back talking about getting the fibrosis. Um, I just don't see. And again, I'll touch on these arguments from counsel and go to my own arguments. But there they are spelled out in the brief. But I just don't see the confusion here. Uh, just this was to me, uh, in trying this case, a very simple case. It's a soft tissue automobile accident case. You had this Dr Gibson who posited these theories, but his theory was based on and I think it's not a situation all or nothing with him. And that's why I cited the instruction in my brief. Because, you know, you can take you can. A jury can take it view him as any other witness. And I think there's there's some things to glean from him and some things that jury would disregard clearly. Well, Mr Webber, with regard to that, is it your contention that the jury awarded, uh, rafia $500 for past lost earnings relating to the six weeks or so that he was recovering from this soft tissue injury? That would have to be the basis based on the based upon the evidence. Yes. Uh, how do you respond to counsel's argument that, um, the jury, um, had to have awarded if they awarded any dollars had to have awarded, uh, certainly more than the 500. But consistent with Dr Gibson's figures of 1 40 something to, um, I'm sorry. I don't have it right in front of me. One, whatever. What? The range of 140,000 because Dr Dr Gibson was impeached in the respect that I asked him. Uh, you know, Dr Gibson, your entire basis is on the average full time musician in the Chicagoland area. Yes, it is. And you would admit that, uh, rafia was never, uh, a full time musician in Chicagoland area. Therefore, he's done as far as the jury. At that point, the jury tunes him out, and they're not gonna award those kind of now. So then you they do tune him up. Then you have to go back and say, Okay, well, where where's the basis? And there's all sorts of the record. Number one, he was a cab driver the year of the accident. He was a cab driver making, I think, 77. I try not to misquote. I think it was 7772 something like that. About $7700. And he tried to drive a cab and couldn't. Okay, so if you look at, um, $7700 the year of the accident, there's certainly a basis for the jury to say, Okay, we'll the year of the accident. During that time, he made less maybe than the than his threshold of of 1500. But there's certainly a basis in the record. And that's why I say it's not all or nothing. And the other thing that's important about Dr Gibson, I was able to get him to admit that, you know, his theory is this future loss, all these complicated formulas, but I did get him to admit that those salaries, that's why I wanted to get them into evidence. Okay, what about 2014? What about before? What about time you were in Syria, all those things. And those were important figures. And he said that those figures were a I'm sitting here back on the jury. And I'm hearing Oh, okay. So I can give that some weight the fact that you're telling me he made $7700 during the course of the year of the accident. You know, maybe their math isn't the best. My, um, if you're going to go strictly on six weeks, you're dividing up $7700. It's obviously not a perfect formula. But it's there's certainly a basis. And it's not arbitrary, fanciful, you know, off the off the charts. Council. Let me ask you this. Go ahead. Just no, I'm just going to ask if the jury accepted that the accident did cause rafias right shoulder impingement. Do you believe then they would have had to accept Dr Gibson's testimony as council indicated? lock, stack and barrel? I think you were just referring to some of this, but that's a honestly, that's a very good question. I consider and think about that. I mean, no, I don't think so. I don't think so. Because, again, um, it's what you're saying is, is they accept if they accept that? No, because again, his his opinion is based on him being a full time musician. And and I think, I think that is, you know, more the issue with him, at least in my mind, thinking about how my whole point of cross examination. If that makes any sense. Thank you. I'm sorry, Justice Bridges, you you were I what I want to ask you is, can I'm going to another areas? Can you tell us what are the reason for defense council's arguments regarding society and litigation? And the ridiculous 1.5 million for this, that they were not trying to connect the dots between litigation and the cost of goods and services. Okay, I'm I'm sorry, I'm trying to find out what other reason would counsel offer that if they were not trying to make that connection? Oh, if they were, you mean, during the blood here when they're asking about goods and services? No, I'm talking about doing an argument. Okay. You mean, you're talking about my argument when I argued that the 1.5 million was ridiculous? I see. Well, my argument there is that the jurors are part of the justice system. They don't do their verdicts in a complete vacuum. It is the 12 of them collectively and using their collective common sense with an eye to truth and justice. And my argument there is totally separate from cost of good services. If that's what you're asking, and I'm not well, that's what I'm asking. Because we hadn't, uh, eliminate motion in this case. So I'm trying to get at what was what was that argument geared for if it wasn't geared to violate the court's order? Right? I see what you're saying. Uh, it was geared towards the again. Um, really? Okay. I think I understand now because that is not where I was going with that. I was going with what I just initially said, which is, you know, they don't make those decisions in the vacuum. Here's your evidence. You have a clear, in my opinion, my doctor, who is the only one who's looked at all the evidence. So we're talking about truth and justice, right? He's the only one who truthfully and justiciably viewed all the evidence. He came to a very clear conclusion that we're talking about. We are talking about proximate cause for a soft tissue, six weeks left shoulder and back injury. So and plaintiff chose. Remember, plaintiff chose not to put in any medical bills. So now you have jurors who are sitting back and what basis do I have toward $1.5 million? That's my argument is okay. 1.5 million. This evidence that's ridiculous. And I also, you know, that's really what there's just no basis. And I didn't just do that either in a vacuum. I mean, I talk about the facts. There's no facts. There's no, there's just no justification. So I was not in any way talking about how it would affect the costs of goods or the costs of services. I'm just talking about truth and justice. That would be so bereft from what truly happened in this case that it would be a rank injustice. I mean, that's beyond every case that people ridicule and laugh about when you're on the street, you know, Oh, what about this case? You know, gosh, they gave him a million for this and 300,000 for that. And I think jurors are, you know, they are humans. They're, they're common sense. They can talk about the verdict at some point later on, someone might ask them what in the world, how could you award $1.5 million for this? How is that justice? And so my thinking during the whole closing argument as everyone is what's truth, what's justice, not about goods and services. If, if I made, if that makes any sense, justice, I don't know, I may have missed your point, but I just don't see the connection that they're making. I understand your question now is they're trying to truthfully, I think they're trying to pigeonhole the, those motions and limiting into what I'm arguing. And that's why this Canuco case comes up because I just don't see any, any relationship with this Canuco case where it's clearly, you know, insurance defense 101, you don't make those arguments because you waive insurance. And you know, that there's, I was taught that as plaintiff's counsel, after you make those arguments, you could get up in rebuttal and say, Hey, you know, there's a $200,000 policy now for this doctor, you know, that kind of thing. And that that's in my thinking, I just don't go there. I mean, I'm talking about what's just in the case. And I just, when you're talking about that and you're throwing out numbers and you've got a guy, it really is. I sincerely believe that that is a ridiculous request. Focusing for just a minute on the verdict forms. Um, plaintiffs argued that case law did require the verdict forms, um, to include separate lines for distinguishing between past and future losses for each category of damages. Do you agree that that's what would well, whether that was required, but even if not required, that would have made the verdict form much clearer. Well, I don't believe that it was required and I don't think it necessarily, uh, says that it would, uh, make the verdict form more clear in this situation where you have, uh, you know, you have a basis in the evidence to, um, award, uh, what's what appears to be clearly past loss wages. I don't think any of the case law they cited. I looked through all the cases. There's this situation you have to give a separate verdict forms. Okay. I'm sorry. I did. Was there something else or, uh, I would touch upon, you know, there's just one other thing cause I am running out of time and then any other questions you may have, but it's, I'm, I am a little, and this might cover a few arguments, I hope, but this thing about the Syrian issue, and it was a little bit ago, but I'm reading from the record page nine, judge Waller saying, I have no problem with you. Getting into your client is from Syria. I have no problem saying they're from Montana or Greece. Just stay away from the political and stay away from the refugee stuff. And that's exactly what his ruling was. He was not precluded in any part of the trial from going into, uh, this year. In fact, I went into it with, uh, Dr. You know, did you, you interviewed him for an hour? You interviewed plaintiff for an hour. Did you ask him what he, what he made before he came to the United States? No, I didn't. I don't know. So you don't even know what he made and then their basis, you know, and then they, they, they, they asked for a large amount of, uh, funds for, for lost wages. But, um, uh, I did have one other question, uh, regarding the request or your conclusion, you asked that the award include, I think you said, quote, without limitation, the costs on appeal. What did you mean by that? And, uh, isn't that usually done by separate motion? Um, I'm sorry, uh, justice, where are in your conclusion, conclusion, your paragraph concluding paragraph, uh, the rulings tri-court was fashioned at the trial of your brief, right? Defendant also respect the request and award that includes the cost of her appeal. And it also respect the request and award that includes without limitations, the cost for appeal. Without limitations. I'm not sure what you're asking here. Um, no, I, I would just say whatever costs are applicable, uh, justice, I'm honestly not, um, all right. So you're saying this is boilerplate that was put in at this point. Yes, I will. All right. Okay. Thank you. All right. So your time is up, uh, and that does either of the justice have any additional questions? No, no. All right. Thank you. And council, you may begin your rebuttal argument. Thank you, justice. I'll be very brief. Um, just somewhere you left off the serial language that Mr. Weber quote, it's very important. You have to pay attention because the language that he cited is from the motion to eliminate hearing or what was said that is different from when the issue comes up during voir dire. When the issue comes up during voir dire, uh, plaintiff's counsel is precluded from talking about Syria. Judge says he doesn't want to get in the facts of the case and say, if you can talk about it in an opening. So what Mr. Weber read is an accurate reflection during the motion to eliminate hearing. But that ruling there was not carried forward to the voir dire questioning where the voir dire question was absolutely precluded about Syria. Um, I want to just talk briefly with Mr. Justice Burkett's, um, issues with, with objections. And, you know, there's a lot of case law, obviously on the issue, whether you object, is it cured? If you don't object, is it weighed? And that's why I think when you take the totality of circumstances, the case, all that cited, the courts have a looser standard today that talks about despite a party's failure to object, the court must examine whether the remarks prompted prejudicially, prejudicially sufficient to deny a fair trial. And that's why I would argue throughout, um, I would argue throughout that the objection for the insurance obviously was totally insufficient to cure the prejudice. Um, and there's also a case, all this, the Brown case that we cited, where the practice of offering matters in the presence of a jury that council knows to be inadmissible in order to, um, go to objections, creates an appearance of concealment on the part of opposing council. And that also can't be condoned. So I think the issue of objections, um, when you look at if it's one or two minor issues that becomes a port, but you look at the totality of the overall effect, that's where the problem comes in. Uh, I asked him to address. So the opening argument and counseling, we didn't touch on that. So why don't you stick to the model of what counsel argued? Why justice? Um, as far as the six weeks, again, the six weeks number has been, I don't have any basis evidence. I don't know where it came from. Dr. Player didn't give a six week opinion. Dr. Glasgow didn't give a six week opinion. And that's the thing. One of the problems with this case is a six weeks has kind of come out of thin air and there's really no basis for it. Um, as far as Mr. Gibson, um, you know, I think whether he was in, I don't think he was impeached. And the reason why he's not impeached. I think the case law is clear and that's the buckler case, the Casey case, the Jackson case, and this is from IPI 30.07 damages incurred as a result of impaired earning capacity or not necessarily measured by proof of past loss wages. That's the buckler case element of damages for future loss earnings does not depend on whether the injured party was employed on the date of the occurrence. That's Casey. And the future warnings instructions proper, even though someone was employed at the time of trial and earning more money than at the time of his injury. So all these questions about his history, what he did before really has no bearing on a future loss of wage earning, and that's straight from the IPI 30.07, which means he wasn't impeached in any way, shape or form now can the jury. Consider that to weigh the evidence maybe. But again, then there has to be a basis anchored in the only economic damages that we have, which is Mr. Gibson's opinion of the one 42 to 185. And clearly there's no, no way, shape or form. Can you get to this $500 based on some impeachment standard, especially given the case law under IPI 30.07. Um, for obviously the reason we talked about lots of other reasons, um, especially calling Mr. Mr. Dr. Player, you know, non-detective. I mean, I think the, the only result can be that the verdict in this case was, um, driven way down to a nominal value. And because of that, I think the court has the ability to award editor. I realized the court's probably more comfortable for a minute or the editor. And if they're not comfortable with the editor, then a new trial can be awarded on damages only. And I would ask that the, uh, obviously orders the verdict, all that be reversed. Uh, the court obviously enter an order consistent with its findings in this case. Thank you. Does either justice have any additional questions? I do not know. Or do I, uh, the court, uh, thanks both parties for their arguments this morning. Uh, the case will be taken under advisement and that disposition will be rendered in due course. Mr. Clerk, uh, you may close the case and terminate these proceedings. Thank you.